Coös,
Feb. 2, 1932.

### MARY EAMES *v.* SOUTHERN NEW HAMPSHIRE HYDRO-ELECTRIC CORPORATION.

*Henry A. Dodge* (by brief and orally), for the plaintiff.

*Hughes & Burns* and *Edmund Sullivan* (*Mr. Burns* orally), for the defendant.

SNOW, J.  The first four exceptions were to the exclusion of opinion evidence for the want of qualification of the proffered witnesses. Their proven knowledge was of sales to the defendant of like rights of way over similar lands in Northumberland made about the same time.  The last two exceptions were to the exclusion of direct proof of such sales, offered as evidence of the market value of the right taken.  As we interpret the record all sales relied upon for either purpose were to the condemnor.  If sales to others were intended it is not made clear.

It will simplify the solution of the questions presented if we consider the law, and its application, governing [I] the admissibility of the sales of other property, as evidence of the value of the property in question, when made (1) to strangers and (2) to the condemnor, and [II] the admissibility of opinion evidence based upon knowledge of such sales.

I. (1) While no infallible standard of the value of real estate has been found, we are accustomed to regard actual sales of similar property under like conditions as affording a fair criterion.  *March* v. *Railroad*, 19 N. H. 372, 377.  Accordingly, when the value of property is in issue, it has been the practice in this state to receive evidence of the price at which other property of like character and condition was sold in the vicinity at or about the time in question.  *Amoskeag &c. Co.* v. *Worcester*, 60 N. H. 522, 525; *Haines* v. *Insurance Co.*, 52 N. H. 467, 469; *Hoit* v. *Russell*, 56 N. H. 559, 563; *Carr* v. *Moore*, 41 N. H. 131, 133; *Ferguson* v. *Clifford*, 37 N. H. 86, 104; *White* v. *Railroad*, 30 N. H. 188, 208; *Concord Railroad* v. *Greely*, 23 N. H. 237, 242; *Thornton* v. *Campton*, 18 N. H. 20, 25.  Whether evidence of a particular sale is admissible in proof of the value of the land in issue involves the joint application of two leading principles, one of evidence and the other of practical expediency, namely, the principle of relevancy and the principle of auxiliary probative policy.  According to

the former, the value or sales-price of the property is irrelevant unless such property is substantially similar in condition to the property in question; according to the second, it may be excluded, although relevant, if it involves in the case in hand a disproportionate confusion of issues and loss of time. Wig. Ev. 463. See *Gerry* v. *Neugebauer*, 83 N. H. 23, 26. In this jurisdiction the determination of each of these issues presents a preliminary question of fact for the trial court, and its finding is final if there is any evidence upon which it can be made. *Cross* v. *Wilkins*, 43 N. H. 332, 334; *Kelsea* v. *Fletcher*, 48 N. H. 282, 284; *Haines* v. *Insurance Co.*, *supra*, 468, 469; *Hoit* v. *Russell*, *supra*, 563; *Amoskeag Mfg. Co.* v. *Head*, 59 N. H. 332, 337, 338; *Amoskeag Mfg. Co.* v. *Worcester*, *supra*, 525.

(2) While the practice, prevailing here, of admitting evidence of the sale of other similar property in the neighborhood made about the same time, is generally approved by the authorities (Lewis, Em. Dom. 3d *ed.* 662), and is followed in nearly all jurisdictions (Nicholas, Em. Dom. (2d *ed.*) 455), the courts of the other states, with nearly like unanimity, exclude evidence of the prices paid for such other properties when the purchases are by the condemning party. Lewis, Em. Dom. *s.* 667; Nicholas, Em. Dom. *s.* 456; 43 L. R. A. (N. s.) 985. The reasons generally given in support of this view are that, since the buyer must have the property and the seller may be compelled to part with it, such sales are not made in an open market but are in the nature of a compromise to avoid the expense, vexation, delay and inconvenience of litigation; and that, therefore, the prices paid can afford no guide to a jury in appraising the value of the property in question. In other words the theory of the courts holding to this doctrine, is that the prices paid by a condemnor can have no probative worth in fixing market values, and hence are irrelevant and inadmissible as a matter of law.

The contrary view has been taken in this jurisdiction. In *Concord Railroad* v. *Greely*, *supra*, an instruction was sustained "that the prices paid by the corporation to other landowners had some tendency to prove what Greely ought to have." Such also was the implied holding in *Amoskeag Mfg. Co.* v. *Head*, 59 N. H. 332, 338; *Amoskeag Mfg. Co.* v. *Worcester*, 60 N. H. 522, 524, 525. To the same effect are *Curley* v. *Mayor*, 83 N. J. L. 760. See *Holmes*, C. J., in *O'Malley* v. *Commonwealth*, 182 Mass. 196.

To us, the basic error in the majority view appears to be in the assumption on which it is founded. While it may be conceded that the price paid by a condemnor is often affected, either by his necessity

or by the compelling power of eminent domain upon the seller, such a result does not necessarily follow. For instance, it may affirmatively appear that the sales-price was the asking price of the seller and that it was neither a compromise nor the result of any oppressive influence. Such was the fact and finding in *Curley* v. *Mayor, supra,* 760. Again, if it be shown that the price paid agrees with that at which other similar properties passed between parties who were strangers to the condemnation proceedings, no reasonable person could say that evidence of it would not contributorily confirm the market character of such price. Such was the case and holding in *Spokane &c. Ry* v. *Lieuallen,* 3 Idaho 381, 383. Other situations where the assumption of the majority view fails may readily be conceived. In other words, it is quite possible that the negotiations for the sale will demonstrate its voluntary character and therefore its probative worth as evidence. *Ferguson* v. *Clifford,* 37 N. H. 86, 105.

All sales are likely to be affected by the motives of the parties thereto, such as the especial needs of the buyer, the insolvent condition or other exigency of the seller, the whims, follies, fancies, or ignorance of local values on the part of one or both of them. Yet sales thus infected are not excluded as a matter of law by the courts holding to the majority view. If sales of other similar properties are to be admitted at all, the true rule would seem to be that the impelling motives which actuate the parties thereto, like similarity and vicinage of the property and proximity in time of the sale, must be considered merely as qualifying circumstances which bear on the probative worth of the price paid as a market criterion. *Concord Railroad* v. *Greely, supra; Curley* v. *Mayor, supra; In re Morris &c. Co.,* 96 N. J. L. 248; *State Highway Comm.* v. *Lally,* (N. J.) 147 Atl. Rep. 487, 488.

What the courts, holding to the majority view, have seemingly done is to adopt the more pronounced phenomena incident to sales to a condemnor as a conclusive test of their probative character. Although such sales are less likely to have useful evidentiary value than sales to strangers, no logical reason in principle is perceived why they should not have the same treatment. Their relative immunity from irrelevant influences is merely a matter of degree, and their reasonable freedom therefrom purely a matter of proof. The test of the probative character of a given sale of either class is to be found in answer to the inquiry whether the motivating circumstances influencing the parties thereto were such as probably to materially affect the price paid, and therefore to destroy its usefulness as a standard of value. Under the practice in this jurisdiction, the issue presented in applying

such test, like the issues of similarity and other comparable conditions of the property, is for the determination of the trial justice.

In other words, just as the trial court must find sufficient similarity and likeness of conditions of the property sold to the property in question before the evidence of the sale is relevant, so, where the offer is of a sale to the condemnor, the court must likewise find that the circumstances of the sale, as respects the freedom of contract, are such that the sale has some tendency to evidence market value before it is relevant. Such findings, if not express, may be implied from the admission of the sales, while the contrary findings may likewise be implied from their exclusion. But in neither case can the respective findings be made without supporting evidence.

As in the case of sales to strangers, so in the case of sales to the condemnor, the principle of auxiliary probative policy applies when, notwithstanding their relevancy, it appears on the evidence that the proof offered involves a disproportionate confusion of issues and loss of time. On this latter issue the necessity of proving the additional qualifying circumstance of freedom of contract may be pertinent.

This brings us to the application of the law, and of the rule of expediency, to the facts of record. The excluded offer, now under consideration [5], was to show sales to the condemnor of similar rights of way across similar properties for the same purpose in the same town, followed by a ruling [6] excluding *any* evidence of such sales. As we have seen, there being no presumption that a sale to a condemnor is wanting in probative quality, the proffered sales were relevant, unless and until the trial court should find that there was such a want of comparable conditions of the properties, or of freedom of contract of the parties, as to destroy the probative worth of the sales-prices as market standards. There was evidence of similarity and of propinquity in time and distance. The sweeping character of the ruling [6] denied the defendant any opportunity to show any other qualifying circumstances of the sales supporting their probative qualities. In this state of the record the evidence could not be excluded as irrelevant.

The evidence was therefore admissible unless the court, on application of the principle of auxiliary probative policy could find that the reception of the evidence involved an unreasonable confusion of issues and loss of time. This fact could not be found without evidence. The sole ground given for the exclusion of the evidence was that its reception involved the trial of "too many cases." The number of the sales it was proposed to investigate does not appear. The sole

evidence of record, therefore, upon which the court could have intended to rest its finding was the fact that the sale was to the condemnor. As we have seen, this fact would not support such a finding. It follows that the exclusion of the evidence under the principle invoked was error.

II. "The opinions of witnesses as to the value of any real estate, goods or chattels may be received as evidence thereof, when it appears to the court that they are qualified to judge of such value." P. L., c. 336, s. 33. This statute was enacted in 1867 (G. S., c. 209, s. 24) to meet a "peculiar, narrow, and inconvenient" rule, excluding opinion evidence of the value of property, which had "become established here, in derogation of the common law." *Boardman* v. *Woodman*, 47 N. H. 120, 145, 146 (1866); *State* v. *Pike*, 49 N. H. 399, 422, 425 (1870). Since the dissenting opinions of Judge *Doe* in these cases, the "narrow" rule which had prevailed before the statute has, by a long line of decisions, gradually given way to a liberalized version of the earlier common law (*State* v. *Killeen*, 79 N. H. 201, 202), under which, "quite independent of the statute," opinion evidence of property values is now received whenever the trial court finds it will probably aid the trier. *Marty* v. *Shaka*, 83 N. H. 411.

Under the theory of the earlier rule, what qualifications an expert must have was a question of law, while the issue whether the proffered witness possessed the required qualifications was a question of fact. *Jones* v. *Tucker*, 41 N. H. 546, 549; *Dole* v. *Johnson*, 50 N. H. 452, 458, 459. Under the present view in this jurisdiction, both issues are to be determined by the trial justice as preliminary questions of fact, and the only issue of law presented by an exception to his finding is whether there was evidence on which his conclusion could be reached. *State* v. *Killeen, supra*, and cases cited; *Gardner* v. *Company*, 79 N. H. 452, 455; *State* v. *Hause*, 82 N. H. 133, 136; *State* v. *Labombarde*, 82 N. H. 493. See *Paquette* v. *Company*, 79 N. H. 288, 290; *Kelsea* v. *Stratford*, 80 N. H. 148, 151; *Olgiati* v. *Company*, 80 N. H. 399, 401; *State* v. *Mannion*, 82 N. H. 518, 523.

Both witnesses professed familiarity with the property right taken from the plaintiff, and each had testified that they had participated in the purchase of similar rights of way over similar properties in the same town. As we have seen, the mere fact that such purchases were made for the defendant did not render the witnesses' knowledge irrelevant. Having relevant knowledge, they were qualified to testify unless the trial justice found upon competent evidence that their testimony could be of no assistance to the jury. The sole ground on

which their opinions were excluded appears to have been that their knowledge was limited to sales to the condemnor. This fact alone, for reasons apparent in our earlier discussion, was insufficient to support a finding that their testimony would not aid the jury. On the record as it stands their exclusion was therefore error.

The underlying mistake, both in declining to hear the testimony of the opinion witnesses, and in excluding the evidence of sales, as well as in the attempted application of the principle of auxiliary probative policy, was in passing upon the factual issues which these several questions presented without permitting the necessary preliminary inquiries. The examination had not proceeded far enough to justify conclusions that the knowledge the witnesses possessed would be of no assistance to the jury, that the offered sales were irrelevant or that the reception of the value evidence in either form would involve the trial of "too many cases," and therefore result in a confusion of issues or an unreasonable expenditure of time. Accordingly, the order here must be

*New trial.*

All concurred.