757 P.2d 716

**PROVIDENT FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff–Respondent,**

v.

**IDAHO LAND DEVELOPERS, INC., an Idaho corporation; James S. Ady and Beulah C. Ady; Paul M. Pelham and Margery L. Pelham; et al., Defendants,**

**and**

**William E. Mockwitz and Mary Sue Mockwitz, Defendants–Appellants.**

**No. 17117.**

Court of Appeals of Idaho.

July 5, 1988.

William M. Killen of Killen & Pittenger, McCall, for defendants-appellants.

Steven D. Erdahl of Elam, Burke & Boyd, Boise, for plaintiff-respondent.

SWANSTROM, Judge.

The dispute in this case surrounds the construction of terms in a concededly unambiguous subordination agreement. William and Mary Mockwitz appeal from the district court's grant of partial summary judgment to Provident Federal Savings and Loan Association. The issues are whether Provident is entitled to judgment as a matter of law based upon the terms of the subordination agreement, and whether the district court abused its discretion in certifying the partial summary judgment as final under I.R.C.P. 54(b). For the reasons explained below, we affirm.

The Mockwitzes, together with Paul and Margery Pelham, purchased a parcel of land in Valley County, Idaho, from James and Beulah Ady.[1] Both couples signed a $33,800 promissory note given to the Adys. The note was secured by a deed of trust naming the Adys as beneficiaries. The deed of trust was recorded on August 19, 1979. Later, the Mockwitzes assumed the entire obligation on the promissory note.

On August 19, 1980, Idaho Land Developers, Inc., (ILD), acquired the Ady parcel by assuming the obligation on the promissory note. The note continued to be secured by the deed of trust. The Mockwitzes remained primarily liable on the promissory note because a novation was not executed and no release was obtained. Idaho Land Developers improved the Ady parcel and a larger adjoining tract by erecting buildings and making a parking lot for proposed commercial use.

To obtain permanent "take out" financing for its operations connected with the development, ILD sought a loan from Provident. Provident conditioned its lending on the securing of first priority lien status on all the real property underlying the development. Accordingly, in May 1982 ILD had the Adys execute a subordination agreement in favor of Provident. Provident received a promissory note from ILD

---

1. In the action below, the Adys are defendants and cross-claimants; the Mockwitzes are defendants, cross-defendants and cross-claimants; Idaho Land Developers, Inc., is a defendant and a cross-defendant; the Pelhams are defendants, but they did not answer or appear in the action. The merits of the cross-claims were not reached in the partial summary judgment. Only the Mockwitzes have appealed from the summary judgment.

in the amount of $850,000, secured by a new deed of trust on both parcels.

Subsequently, ILD defaulted on its payments under the note. Provident then initiated this action and moved for summary judgment. The parties all declared that no issues of fact existed and that the subordination agreement was unambiguous. Consequently, the district court construed the subordination agreement, determining it entitled Provident to judgment as a matter of law. The judgment was certified as final pursuant to I.R.C.P. 54(b). The Mockwitzes' motion to alter or amend the judgment was denied and they perfected this appeal.[2]

## I. RULE 54(b) CERTIFICATION

We first consider whether the district court abused its discretion in certifying as final under I.R.C.P. 54(b) the partial summary judgment. The decision to certify a partial summary judgment as a final order for appeal purposes rests in the trial court's discretion. *Willis v. Larsen,* 110 Idaho 818, 718 P.2d 1256 (Ct.App.1986). Such a decision will not be set aside unless an abuse of discretion is shown. *Snake River Equipment Co. v. Christensen,* 107 Idaho 541, 691 P.2d 787 (Ct.App.1984). Abuse of discretion may exist where no hardship, injustice or other compelling reason is shown for certification. *Milbank Mutual Insurance Co. v. Carrier Corp.,* 112 Idaho 27, 730 P.2d 947 (1986); *Pichon v. L.J. Broekemeier, Inc.,* 99 Idaho 598, 586 P.2d 1042 (1978).

The district court issued the certification, determining there was no just reason for delaying final judgment on the issues settled by the partial summary judgment. The district court did not state why there was no just reason for delaying final judgment. Nonetheless, we may review the record to determine whether hardship, injustice or other compelling reasons exist. *See, e.g., Milbank Mutual Insurance Co.*

*v. Carrier Corp, supra; Snake River Equipment Co. v. Christensen, supra.*

The issues presented in the summary judgment were questions of law; no facts were in dispute. All issues between Provident and the defendants were resolved on summary judgment. Only the cross-claims between the defendants remain unadjudicated. The defendants' cross-claims will largely turn upon the outcome of Provident's claims. Indeed, the district court cannot, with assuredness, reach the merits of the claims between the Adys and the Mockwitzes without knowing the ultimate determination on Provident's summary judgment. Further, a delay in finalizing the judgment—thus preventing foreclosure of the property—would have lessened Provident's chance of realizing a maximum recovery of the value of its security. These facts present sufficient compelling reasons for certification. On this record, we cannot say the trial court abused its discretion.

## II. SUMMARY JUDGMENT

The district court's memorandum decision provides a well-reasoned analysis of the issues and we will liberally use it. The standards for appellate review of summary judgment do not require extensive discussion. Summary judgment is appropriate when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). As noted, there are no factual issues present here. Therefore, our duty is to review the record and determine whether, as a matter of law, Provident was entitled to judgment on its claims.

All the parties concede that the subordination agreement is unambiguous. Where the language of a written agreement is clear and unambiguous, the language employed will be construed for its legal effect according its ordinary meaning. Such a determination is a question of law. *International Engineering Co. v. Daum Indus-*

---

**2.** Provident questions whether the Mockwitzes are the real party in interest for appeal purposes. We have not been favored with persuasive authority or argument on this point, other than a citation to I.R.C.P. 17(a). We believe the Mockwitzes are a "party aggrieved by an appealable judgment" and thus properly may pursue this appeal. I.A.R. 4.

*tries, Inc.,* 102 Idaho 363, 630 P.2d 155 (1981).

The subordination agreement at issue here states:

> In consideration of the purchase of the above described property by Mockwitz-Pelham from Sellers [the Adys] and for the purpose of enabling Idaho Land Developers, Inc. to obtain a loan from PROVIDENT FEDERAL SAVINGS AND LOAN ASSOCIATION for construction on the above described real property, which loan is to be secured by the above property, the Sellers do hereby subordinate the above described Deed of Trust to be recorded by PROVIDENT FEDERAL SAVINGS AND LOAN ASSOCIATION against said property, and Sellers agree that the Deed of Trust in favor of PROVIDENT FEDERAL SAVINGS AND LOAN ASSOCIATION shall be prior to and superior to the lien of the said Deed of Trust in favor of Sellers.

Emphasizing the *purpose* of the agreement —to obtain a loan for construction on the Ady parcel—the Mockwitzes insist that this limits or makes conditional Provident's right of priority. By construing the agreement in this manner, the Mockwitzes contend that, as a matter of law, the Adys are subordinated and Provident may foreclose only to the extent of construction money actually expended on the Ady parcel or to the actual value of the improvements on the Ady parcel. Provident, of course, construes the agreement as unlimited.

We are faced with a unique setting for construing the subordination agreement. The parties on appeal did not draft the agreement, nor were they involved in the negotiation and execution of it. The agreement was obtained from the Adys by ILD, and ILD apparently drafted the document. Further, Provident was not the construction lender; construction had been completed with an interim loan at the time Provident agreed to supply permanent "take out" financing.

In our view, the subordination agreement contains no qualifications limiting Provident's priority status in the manner suggested by the Mockwitzes. There is no express provision in the agreement clearly limiting Provident's priority to the amount actually expended on the Ady parcel. Nor is there language conditioning Provident's priority on the value of improvements made to the Ady parcel. Absent such provisions, the law will impose no limits. *See Big Land Investment Corp. v. Lomas & Nettleton Financial Corp.,* 657 P.2d 837 (Alaska 1983); *Peoples Bank & Trust Co. v. Rocky Mountain, Etc.,* 620 P.2d 58 (Colo.App.1980). *Compare Riggs National Bank v. Wines,* 474 A.2d 1360 (Md.Ct. Spec.App.1984) (lender's priority status under subordination agreement expressly limited to proceeds applied to the erection of improvements on property). We agree with the district court's following observation.

> Lenders who provide long-term financing for major projects will often insist on a first priority position. If the subordinated party wants to insist on additional protections for its interests, it can do so and withhold providing a subordination agreement until it has obtained express conditions which provide the desired protection. There is no basis for the Court to create additional restrictions and inject uncertainty into an area which requires that parties clearly understand the priority of their claims against real property. The Subordination Agreement at issue in this case clearly provides a first priority status to the plaintiff. The recitation of the purpose of the Subordination Agreement does not change the character of it: it gives a priority lien status to the plaintiff. The Agreement is not expressly limited to the value of the construction placed upon the real property.

The summary judgment, and the order certifying the judgment as final, are affirmed. Costs to Provident. No attorney fees on appeal.

WALTERS, C.J., and BURNETT, J., concur.